UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TONYA L.,

                              Plaintiff,

v.                                                                                  3:19-CV-01044(TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>for Plaintiff<br>250 South Clinton Street, Suite 210<br>Syracuse, NY 13202 | MELISSA DelGUERCIO, ESQ. |
| HON. GRANT JAQUITH<br>United States Attorney<br>for Defendant<br>100 S. Clinton St.<br>PO Box 7198<br>Syracuse, NY 13261-7198 | DANIELLA M. CALENZO, ESQ.<br>Special Assistant |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**<u>ORDER</u>**

      Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on August 7, 2020, during a telephone conference at which a court reporter was

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

present.  At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination resulted from the application of proper legal principles and was supported by substantial evidence, and I provided further detail regarding my reasoning and addressing the specific issues raised by the Plaintiff in her appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this Order, and is incorporated in its entirety by reference herein, it is hereby,

**ORDERED**, as follows:

(1) Defendant's motion for judgment on the pleadings is **GRANTED**;

(2) The Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is **AFFIRMED**; and

(3) The Clerk is directed to enter judgment, based upon this determination, dismissing Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: August 11, 2020
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
 1                    UNITED STATES DISTRICT COURT

 2                    NORTHERN DISTRICT OF NEW YORK

 3

 4   TONYA L.,                              )
                                            )
 5                                          )
                   Plaintiff,               ) CASE NO. 19-CV-1044
 6                                          )
        vs.                                 )
 7                                          )
     COMMISSIONER OF SOCIAL SECURITY,       )
 8                                          )
                   Defendant.               )
 9   _____)
```

10                    **TRANSCRIPT OF PROCEEDINGS**
                **BEFORE THE HON. THÉRÈSE WILEY DANCKS**
11                    **FRIDAY, AUGUST 7, 2020**
                        **SYRACUSE, NEW YORK**

12

13  **FOR THE PLAINTIFF:**
       OLINSKY LAW GROUP
14     BY:  MELISSA A. DELGUERCIO, ESQ.
       250 South Clinton Street, Suite 210
15     Syracuse, New York 13202

16  **FOR THE DEFENDANT:**
       SOCIAL SECURITY ADMINISTRATION
17     OFFICE OF REGIONAL GENERAL COUNSEL
       By:  Daniella M. Calenzo, ESQ.
18     26 Federal Plaza, Room 3904
       New York, New York 10278

19

20

21

22

23

24

25

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

**19-CV-1044**

1            (Teleconference, 11:25 a.m.)

2            THE COURT:  So I'm going to issue my decision today,
3   and this part of my decision or this part of the transcript of
4   today's chat will be transcribed and attached to my order.  I
5   think you both are familiar with how I do that.  So with that,
6   I'll start.

7            I have before me a request for judicial review of an
8   adverse determination by the acting commissioner under 42 United
9   States Code Section 405(g).  The background is as follows.
10  Plaintiff was born in March of 1971 and is currently 49 years
11  old.  She was 42 years old at the onset of her alleged
12  disability.  She has a high school diploma.  She has not engaged
13  in substantial gainful activity since the alleged onset date.
14  She has previously worked as a home health aide.

15           In her application for benefits, she indicated she
16  suffers from cervicalgia, degenerative disc disease, bursitis,
17  arthritis, diabetes, high cholesterol, asthma, migraines, and
18  depression.

19           Procedurally, plaintiff filed for Title II and Title
20  XVI benefits on January 30, 2015.  The application alleged
21  disability beginning on June 1, 2013.  A hearing was held on
22  May 19, 2017, resulting in an unfavorable decision, which was
23  appealed to the Appeals Council and then to this District Court.
24  It was remanded by the District Court on stipulation, and the
25  Appeals Council then remanded it for another hearing.

1              Relevant to this appeal, a second hearing was held on
2    June 14, 2019, conducted by Administrative Law Judge Kenneth
3    Theurer wherein plaintiff testified, as did a vocational expert.
4    Plaintiff was represented at the hearing by an attorney's office
5    with a licensed representative, and then he was also -- she was
6    also represented through the Appeals Council process in the
7    first hearing.
8              ALJ Theurer issued a decision on June 20, 2019,
9    finding that plaintiff was not disabled at the relevant time.
10   The plaintiff bypassed written exceptions, thus making the ALJ's
11   June 20th decision the final determination of the agency since
12   the Appeals Council did not review this decision that we're here
13   about today on its own.  This timely District Court action
14   followed.
15             The ALJ applied the five-step sequential test for
16   determining disability.  At step one, he found plaintiff had not
17   engaged in substantial gainful activity since the onset date of
18   disability.
19             At step two, he concluded plaintiff has the following
20   severe conditions:  spine and hip impairments, arthritis of the
21   hand, carpal tunnel syndrome, asthma, obesity, depression, and
22   anxiety.
23             At step three, the ALJ concluded that plaintiff's
24   conditions do not meet or medically equal any of the listed
25   presumptively disabling conditions, considering several listings

**19-CV-1044**

1  related to spine and joint disorders and mental health.  Then
2  after a review of the record evidence, the ALJ determined
3  plaintiff is capable of performing sedentary work, but with
4  several detailed additional postural and nonexertional
5  limitations considering her physical and mental abilities.
6         At step four, the ALJ concluded plaintiff could not
7  perform her past relevant work.
8         At step five, the ALJ applied the medical vocational
9  guidelines and obtained testimony from a vocational expert and
10 then concluded that plaintiff was not disabled.
11        As relevant to the time period in question, plaintiff
12 treated for primary care with Dr. Jenny Brown at Saint Joseph's
13 Physicians Family Medicine, formerly North Medical Family
14 Physicians.  She saw a few other practitioners at that service,
15 but the vast majority of encounters were with Dr. Brown.
16        She was also treated at Syracuse Orthopedic
17 Specialists by Dr. Daniel Murphy who performed a carpal tunnel
18 release surgery on plaintiff's right hand on December 7, 2017.
19        During the relevant time period, she was also seen on
20 one occasion by physician assistant Jaclyn Ireland at Upstate
21 Orthopedics and on five dates between December of 2014 and
22 October of 2017 at Cayuga Medical Center's urgent care
23 facilities.
24        The administrative transcript also contains the
25 records of Dr. Dean DeRoberts who performed a breast reduction

**19-CV-1044**

1  surgery operation on plaintiff in 2015.

2  During the relevant time period, diagnostic studies
3  performed include various x-rays of her cervical, thoracic, and
4  lumbar spine areas, right hip, pelvis, and left shoulder.  She
5  also had an MRI of her lumbar spine and an MRI of her right hip.
6  An EMG and nerve conduction study were completed in August of
7  2017.

8  A source statement in the record is from primary care
9  provider Dr. Brown.  Other opinions included in the record are
10 from internal medicine consultant -- excuse me, family medicine
11 consultant Dr. Justine Magurno who opined on plaintiff's
12 physical limitations and psychologist Dr. Amanda Slowick who
13 conducted the psychological evaluation.  Agency record reviewer
14 psychologist Dr. Harding also provided an opinion regarding
15 plaintiff's mental limitations.

16 I've reviewed the record carefully, and in light of
17 the arguments of counsel and what counsel have presented in
18 their briefs, I've applied the requisite deferential standard
19 which requires me to determine whether proper legal principles
20 were applied and whether the result is supported by substantial
21 evidence.

22 I'll turn first to the plaintiff 's argument that the
23 ALJ erred in the determination of plaintiff's residual
24 functional capacity or RFC and specifically that the ALJ did not
25 give proper weigh to the opinion evidence.  I've done a thorough

1   and searching review of the record and find that the ALJ

2   properly assessed the medical and nonmedical evidence in the

3   record and the RFC is supported by substantial evidence.  The

4   ALJ discussed the medical evidence and other evidence of record,

5   formulated the RFC based upon an assessment of all of the

6   evidence as a whole for the relevant time period, and thoroughly

7   explained his analysis in arriving at the RFC.

8            The ALJ's decision shows he considered plaintiff's

9   testimony, her adult function report, her activities of daily

10  living, and all of the treatment records for the relevant

11  period.  He gave partial weight to the opinion of consulting

12  family medicine physician Dr. Magurno.  He credited consulting

13  psychologist Dr. Harding's opinion with great weight and gave

14  less weigh to examining consulting psychologist Dr. Slowick.  He

15  also gave less weight to treating primary care physician

16  Dr. Brown.

17           Regarding plaintiff's physical functioning, plaintiff

18  argued the ALJ's assessment of the opinion of Dr. Brown was

19  improper because the ALJ's review of that opinion is internally

20  inconsistent.  She also asserts the ALJ mischaracterized the

21  source statement when indicating Dr. Brown did not set out any

22  symptoms to support the opinion.  Plaintiff further contends the

23  opinion of Dr. Brown is supported by her treatment notes

24  concerning plaintiff's care and the diagnostic test results.

25           As to Dr. Magurno's opinion, plaintiff argues the ALJ

1  improperly rejected the marked impairments found by Dr. Magurno
2  and did not properly explain why her exam of the plaintiff did
3  not support the marked impairment and how the RFC accounts for
4  plaintiff's complaints of migraines.
5           As for plaintiff's mental functioning, plaintiff
6  contends that part of the RFC is not supported by the record
7  evidence and the ALJ did not give appropriate weight to
8  Dr. Slowick's opinion, which she argues is consistent with the
9  mental issues treated by Dr. Brown.
10          For the following reasons, I find these arguments
11 unpersuasive.  Initially, I note that the ALJ is not required to
12 accept every limitation assessed by an examining consultant.  I
13 also note there is no requirement that the ALJ accept every
14 limitation in the opinion of a treating medical source, nor must
15 the RFC identically track any one of the opinions in the record.
16 The ALJ has the responsibility of reviewing all of the evidence
17 before him, resolving inconsistencies, and making a
18 determination consistent with the evidence as a whole.  It is
19 the ALJ's responsibility to weigh various opinions along with
20 other evidence and determine what limitations were supported by
21 the overall evidence in the record.  The Court cannot reweigh
22 the evidence under the substantial evidence review standard.
23          Here, I find the ALJ clearly considered all of the
24 opinions and other evidence of record when determining
25 plaintiff's overall RFC including the mental limitations.  I've

1  done a thorough and searching review of the record and find the
2  ALJ properly assessed the opinions and gave good reasons for the
3  weight given to them.
4       Regarding the opinion of Dr. Brown, the ALJ
5  acknowledged the treatment relationship with plaintiff, but
6  noted that Dr. Brown was not a specialist and that she did not
7  set forth any symptoms in support of her opinion and the record
8  showed plaintiff's functioning was greater than the opinions
9  provided by Dr. Brown.  Additionally, the ALJ explained the
10 weight given to Dr. Brown's opinion by noting that Dr. Brown
11 provided conservative treatment for plaintiff's complaints of
12 spinal and joint pain and the diagnostic test results did not
13 support the findings -- excuse me, the significant limitations
14 opined by Dr. Brown.
15      For example, progress notes by Dr. Brown and
16 occasionally other providers at her practice certainly show
17 plaintiff's regular treatment there, but also repeatedly note
18 normal and mild findings concerning plaintiff's musculoskeletal
19 exam.  Two encounters in 2013 do not note any neck or other
20 musculoskeletal complaints, and the note of December 2013 shows
21 plaintiff had equal and full strength in upper and lower
22 extremities.
23      In 2014, plaintiff complained of chronic back and hip
24 pain, but again the musculoskeletal exams were charted as within
25 normal range of motion and strength, generally without

**19-CV-1044**

tenderness, although she did have some decreased range of motion of the right hip without point tenderness, and she exhibited some tenderness in the paraspinal lumbar muscles.

Other office visit notes chart plaintiff complained of back pain and joint stiffness, but no neck pain. She was largely noted to have normal range of motion in the neck and in the remainder of her musculoskeletal exam. She did not have joint swelling or gait problems. She had normal muscle tone, reflexes, and coordination with no swelling or tenderness.

In January of 2015, plaintiff complained of worsening neck pain and left shoulder pain to the elbow with some numbness in the thumb. She exhibited tenderness on exam and decreased range of motion in her shoulder, which had tenderness, pain, and spasm. Still, she had normal muscle tone, coordination, and gait. Her upper and lower extremity reflexes were normal. She was referred for physical therapy.

In February 2015, she had normal range of motion in the neck and the rest of her musculoskeletal exam with no swelling or tenderness and with normal muscle tone, reflexes, and coordination. As the year progressed, she exhibited some decreased range of motion, pain, and spasm in her cervical spine with some tenderness in her upper extremities, but these findings then improved such that normal range of motion returned on most visits, and she did not exhibit swelling or tenderness on exam. Her spine pain generally improved after she had breast

1    reduction surgery that year.

2            In 2016, she was found to have normal neck range of

3    motion and some tenderness and spasm in her cervical spine and

4    right shoulder, but still exhibited normal muscle tone,

5    reflexes, coordination, and gait.  Findings on later

6    musculoskeletal exams that year were largely normal with some

7    decreased range of motion and tenderness in her spine only on

8    occasion.  However, it was noted that she joined a gym and was

9    working out three times per week.

10           In 2017, her cervical spine showed some decreased

11   range of motion, tenderness, and spasm, but she continued to

12   exhibit normal muscle tone, coordination, and reflexes.  She was

13   encouraged to exercise, yet in Dr. Brown's source statement

14   dated May 26, 2017, Dr. Brown opined plaintiff is unable to

15   function in physical activity due to her pain.

16           Records were updated for the 2019 hearing, and

17   plaintiff apparently did not treat with Dr. Brown in 2018.  Then

18   notes from 2019 showed some decreased range of motion in her

19   spine with tenderness, but no swelling and normal range of

20   motion in her back and normal muscle tone, coordination, and

21   reflexes.

22           Throughout the course of treatment by Dr. Brown,

23   plaintiff was provided conservative treatment of pain medication

24   and physical therapy to treat her spine and joint conditions.

25           Diagnostic tests during the relevant time period show

**19-CV-1044**

1   some mild degenerative disc disease and mild findings on x-rays
2   of the cervical, thoracic, and lower spine, right hip, pelvis,
3   and shoulder.  An MRI of the lumbar spine showed only minimal
4   degenerative changes and was otherwise negative.  An MRI of the
5   right hip was normal.  An x-ray of her cervical spine done at
6   Upstate Orthopedics showed only mild degenerative changes.  Her
7   exam there showed some decreased range of motion in the cervical
8   spine, but the rest of her musculoskeletal exam was normal, and
9   she had full strength and sensation in her upper and lower
10  extremities on motor exam.

11           She had an EMG and nerve conduction studies in 2017,
12  which showed right carpal tunnel syndrome, for which she
13  underwent a relief procedure by Dr. Murphy of Syracuse
14  Orthopedic Specialists with good results.  X-rays of her right
15  hand done at that practice showed some arthritis in her right
16  thumb, but she had full range of motion in the upper right
17  extremity and equal grip strength.  Her gait and coordination
18  were normal on exam at that practice.

19           Finding on exams for complaints of shoulder pain and
20  right hip pain at urgent care visits in the Cayuga Medical
21  Center showed mild arthritis of the shoulder and mild
22  degenerative disc disease of the cervical spine.  Plaintiff
23  attended a few aquatic physical therapy sessions through that
24  medical center in 2015, but it appears that she only completed
25  three of the 20 authorized visits.

1               Given this summary of the medical records, I find the
2    weight given to Dr. Brown's opinion is appropriate and the
3    reasons for giving it less weight were properly explained and
4    supported by the records, which showed generally mild findings
5    and improvement with conservative treatment.  The ALJ's RFC
6    finding limiting plaintiff to sedentary work with other postural
7    limitations is consistent with the record, and he gave good
8    reasons for the weight given to Dr. Brown's overly restrictive
9    opinion which was not supported by her own treatment notes, the
10   notes of other providers, and the diagnostic tests as I've just
11   summarized.  As such, I find no error with the ALJ's
12   consideration of Dr. Brown's opinion.
13              Similarly and for the same reasons, I find no error
14   with the ALJ's consideration and explanation of the weight given
15   to Dr. Magurno's opinion.  Dr. Magurno examined plaintiff and
16   has agency expertise.  Her opined limitations were not
17   consistent with her own exam findings, which were largely
18   unremarkable.
19              Dr. Magurno found plaintiff to have some decreased
20   range of motion in her cervical spine and full range of motion
21   in her lumbar spine except for a slight decrease in flexion.
22   Straight leg raise testing was negative.  Plaintiff exhibited
23   full range of motion in her joints with the exception of some
24   slight decrease in her left knee.  Reflexes were normal, and her
25   strength in both upper extremities was full and equal and in her

1  lower extremities was only slightly unequal proximally.  Grip
2  strength was only slightly diminished on the right.
3          Dr. Magurno's opinion on marked limitations was not
4  supported by other record evidence or the mild findings of
5  diagnostic tests as I've already outlined, nor was her opinion
6  regarding a schedule disruption due to plaintiff's migraines
7  supported.  While plaintiff's medical treatment notes at
8  Dr. Brown's service show she had a history of migraines, almost
9  all of the treatment notes indicate negative complaints for
10 headaches, dizziness, or lightheadedness in the review of the
11 systems and no findings on exam which would support migraines or
12 headaches that would disrupt a work schedule.  She did complain
13 of headaches associated with her cervical pain to the provider
14 at the one visit at Upstate Orthopedics, but her motor and
15 sensory exam was entirely normal there.  And she did complain of
16 some headaches after the breast reduction surgery, but that
17 subsided.
18          Turning now to plaintiff's mental capacity and the
19 ALJ's evaluation of the opinion of Dr. Slowik, I find the ALJ
20 properly considered it and the less weight attributed to it was
21 also supported by substantial evidence.  Treatment notes by
22 Dr. Brown and others at that service consistently show
23 plaintiff's mental status on review of system to be negative for
24 behavioral and psychiatric complaints, and she did not appear
25 nervous or anxious.  On exam, it was consistently charted that

**19-CV-1044**

1  she had a normal mood and affect.  Her behavior was normal, and
2  her judgment and thought content were normal.  She was noted to
3  have a normal mood and affect at Upstate Orthopedics.  Chart
4  notes at the urgent care visits at Cayuga Medical Center showed
5  negative psychiatric findings.  Dr. Slowick's own findings on
6  exam were normal except she found plaintiff to have a mildly
7  depressed mood and mildly impaired concentration, attention, and
8  memory skills.  Dr. Slowik and all other treatment providers
9  indicate plaintiff was always oriented in all spheres with
10 average intellectual functioning.
11         Thus, I find the ALJ considered the relevant factors
12 when weighing Dr. Slowik's opinion by noting the opinion was
13 inconsistent with examinations and treatment notes in the record
14 and plaintiff's lack of mental health treatment other than
15 medications provided by Dr. Brown.  Further, the mental
16 limitations in the RFC were consistent with the opinion of
17 nonexamining agency consultant Dr. Harding, whose opinion is
18 consistent with other findings in the record as I've noted.
19         Although Dr. Harding did not personally examine the
20 plaintiff, it is well settled that the opinions of state agency
21 consultants can be given weight if supported by medical evidence
22 and other evidence of record.  The ALJ clearly stated and the
23 record supports that he gave great weight to Dr. Harding's
24 opinion because it was supported by the record and because of
25 his programmatic expertise.

1        Thus, I also find all the treatment outlined above was
2    thoroughly reviewed by the ALJ and the records provide clear and
3    substantial evidence to support the RFC mental determination
4    such that meaningful judicial review is possible.  I also find
5    that the RFC's determination is supported from a physical
6    standpoint.
7        Only where the reviewing court is unable to fathom the
8    ALJ's rationale in relation to the evidence in the record would
9    remand be appropriate for further findings or clearer
10   explanation for the decision.  Here, I find the ALJ's analysis
11   regarding plaintiff's functional limitations and restrictions
12   affords an adequate basis for meaningful judicial review,
13   applies the proper standards, and is supported by substantial
14   evidence, such that additional analysis would be unnecessary or
15   superfluous.
16       In sum, I find the ALJ properly weighed the opinions
17   of the record for the relevant periods, gave good reasons for
18   the weight given to the opinions, and the ALJ considered all of
19   the medical and other evidence of record, including plaintiff's
20   own reported activities per her testimony, her function report,
21   and as she reported to providers and consultant.  All of this
22   supports the ALJ's determination of the plaintiff's RFC.  So in
23   light of the foregoing and considering the entire record and the
24   ALJ's determination, I find the ALJ applied the appropriate
25   legal standards of review in considering the opinion evidence

**19-CV-1044**

1  and determining plaintiff's RFC, which is supported by
2  substantial evidence.
3          Lastly, I find plaintiff's step-five arguments
4  unavailing for the reasons argued by the commissioner.  The
5  ALJ's hypothetical was consistent with the RFC, which I have
6  found to be supported and properly explained.  I also find no
7  conflict between the Dictionary of Occupational Titles and the
8  jobs the vocational expert indicated plaintiff could do with her
9  mental RFC.  The jobs identified by the vocational expert are
10 unskilled with simple duties consistent with the RFC limiting
11 plaintiff to simple work.  Thus, I find no inconsistency between
12 the vocational expert's testimony and the DOT, and the reasoning
13 level of 3 is consistent with limiting plaintiff to simple work.
14 I also note plaintiff also indicated she could follow written
15 and spoken instructions in her function report.
16         So I grant defendant's motion for judgment on the
17 pleadings and will enter a judgment dismissing plaintiff's
18 complaint in this action.  A copy of the transcript of my
19 decision will be attached to the order should any appeal be
20 taken from my determination.  So that ends the part of the
21 transcript that will be transcribed.
22                  (End of transcript, 11:47 a.m.)
23
24
25

*JACQUELINE STROFFOLINO, RPR*
*UNITED STATES DISTRICT COURT - NDNY*

CERTIFICATION OF OFFICIAL REPORTER

I, JACQUELINE STROFFOLINO, RPR, Official Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 7th day of August, 2020.

**/s/ JACQUELINE STROFFOLINO**

JACQUELINE STROFFOLINO, RPR

FEDERAL OFFICIAL COURT REPORTER